**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

TRAVIS AGUILLARD

VERSUS

AMAZON.COM SERVICES, LLC et al.,

CIVIL ACTION

3:25-670-SDD-SDJ

**RULING**

This matter is before the Court on the *Motion to Dismiss for Failure to State a Claim*[1] filed by Defendant Amazon.com Services, LLC ("Amazon" or "Defendant"). Plaintiff, Travis Augillard[2] ("Augillard" or "Plaintiff") filed an *Opposition*,[3] to which Defendant filed a *Reply*.[4]  After careful consideration of the parties' arguments and applicable law, the Court finds that the Defendant's *Motion* shall be GRANTED.

**I.     FACTUAL ALLEGATIONS & PROCEDURAL BACKGROUND**

This case arises from personal injuries Plaintiff suffered following a medical episode he experienced while working at Defendant's warehouse in Port Allen, Louisiana ("the Warehouse").  On or about August 10, 2024, Plaintiff, a maintenance technician employed by non-party Jones Lang LaSalle Americas, Inc. ("Jones Lang"), was assigned to perform maintenance services at the Warehouse.  While doing so, Plaintiff suddenly lost consciousness and began convulsing on the floor.  Although he was alone at the

---

[1] Rec. Doc. No. 21.
[2] There is discrepancy between the spelling of Plaintiff's surname as it appears in the administrative caption of this case ("Aguillard"), and as it appears in the pleadings filed thus far ("Augillard").  This Court uses the spelling Augillard uses in his own pleadings.
[3] Rec. Doc. No. 23.
[4] Rec. Doc. No. 24.

1

time, Plaintiff's fall managed to engage a door security alarm. Defendant's managers and safety personnel, however, were absent from their assigned positions, leading to a delay in discovering Plaintiff's medical emergency and efforts to render aid. As a result, Plaintiff's convulsion went unattended for nearly half an hour, during which time he repeatedly struck his head and back, causing severe bodily injury.

On October 7, 2024, Plaintiff filed this lawsuit in Louisiana state court, alleging negligence and negligence *per se* against Defendants Amazon and Universal Protection Service, LLC ("Universal") (collectively "Defendants"). Defendants removed to this Court, asserting federal diversity jurisdiction under 28 U.S.C. § 1332(a).[5] Amazon thereafter filed its first *Motion to Dismiss*[6] on November 12, 2025 (the "December 2025 *Motion*"). Plaintiff responded by filing an *Amended Complaint*, alleging Amazon is liable under theories of negligence, negligent undertaking, vicarious liability, and premises liability.[7] Amazon subsequently filed the instant *Motion to Dismiss*,[8] causing the Court to deny the December 2025 *Motion* as moot.[9]

With this background in mind, the Court turns its attention to the motion before it.

## II. LAW & ANALYSIS

### A. Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[10] The Court may consider "the complaint, its proper attachments, documents incorporated into

---

[5] Rec. Doc. No. 1, pp. 2-3.
[6] Rec. Doc. No. 12.
[7] Rec. Doc. No. 15.
[8] Rec. Doc. No. 21.
[9] Rec. Doc. No. 26.
[10] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

the complaint by reference, and matters of which a court may take judicial notice."[11]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[12]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[13]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[14]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[16]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[17]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[18]

---

[11] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[12] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (internal citation omitted).

[13] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted)(hereinafter "*Iqbal*").

[15] *Id.* at 663.

[16] *Iqbal*, 556 U.S. at 678.

[17] *Taha v. William Marsh Rice University*, 2012 WL 1576099, at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[18] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

### B. Negligence and Premises Liability

While negligence[19] and premises liability[20] are distinct causes of action under Louisiana law, "liability for both tort claims is determined by applying the duty/risk analysis."[21]   As such, the result under either "should be the same."[22]   The duty/risk analysis requires a plaintiff to prove five elements: "(1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability [] element); and, (5) actual damages (the damages element)."[23]  Each element of the duty/risk analysis is dispositive, in that, if any one element is not present, liability cannot result.[24]

The duty element is the crux of this motion, and the parties vigorously dispute what duty, if any, Amazon owed Plaintiff.  The absence of a duty entirely negates a cause of action for negligence.[25]  Plaintiff argues that Amazon owed him a duty to act reasonably in its provision of safety and security supervision at the Warehouse.[26]  He relies on *Miller v. McDonald's Corporation*[27] for the proposition that "a proprietor of a business

---

[19] La. C.C. art. 2315.

[20] La. C.C. art. 2317.1.

[21] *Johnson v. Evanston Ins. Co.*, 368 So. 3d 703, 711 (La. App. 4th Cir. 2023).

[22] *Campbell v. Orient-Express Hotels Louisiana, Inc.*, 403 So. 3d 573, 580 (La. 2025) (citing *Farrell v. Circle K Stores, Inc.*, 359 So. 3d 467, 473 (La. 2023)).

[23] *Jones v. Boot Bar & Grill*, 350 So. 3d 968, 984 (La. App. 4th Cir. 2022).

[24] *Kniepp v. City of Shreveport*, 609 So. 2d 1163, 1168 (La. App. 2d Cir. 1992).

[25] *See Campbell*, 403 So. 3d at 581 (citing *Posecai v. Wal-Mart Stores, Inc.*, 752 So. 2d 762, 769 (La. 1999) (where the court "found that no duty was owed, [it did] not reach the other elements of the duty-risk analysis that must be proven in establishing a negligence claim.")).

[26] Rec. Doc. No. 23 (citing Rec. Doc. No. 15 ¶¶ 5-11, 13).

[27] 439 So. 2d 561, 564-65 (La. App. 1st Cir. 1983).

establishment has an ordinary duty of care to render reasonable aid under the circumstances after he knows or has reason to know that a person on his premises is ill or injured."[28]  Moreover, Plaintiff contends the following allegations[29] are sufficient (in any event) to impose a duty of reasonable care on Amazon:

- Amazon controlled the premises upon which he was injured, and he arrived there for Amazon's benefit;
- Amazon's safety representatives were required by policy to accompany and monitor workers such as [Plaintiff] on its premises;
- Amazon managers were required by internal safety policies to be present in [Plaintiff's] work area, but were absent at the time of his injury;
- [Plaintiff] had previously repeatedly complained about Amazon's failure to follow its own safety policies and procedures, to no avail;
- Amazon installed safety alarms on its premises, and employed/controlled the individuals charged with monitoring them;
- Amazon employees knew or should have known of [Plaintiff's] emergency when he triggered the emergency alarm but disregarded it.

Amazon, on the other hand, maintains that "Plaintiff's entire amended complaint depends on conflating 'safety and security' with emergency medical assistance."[30]  In its view, Plaintiff asks this Court to do what no other has done: find "a duty of a warehouse owner to monitor, 24/7, every inch of a warehouse that is not open to the public, for emergency medical situations that may befall independent contractors, and to promptly render medical assistance."[31]

Whether a legal duty exists is a question of law the Court must determine as a

---

[28] Rec. Doc. No. 23, p. 5.
[29] *Id.* at p. 5 (citing Rec. Doc. 15, ¶¶ 5, 6, 7, 9, 11).
[30] Rec. Doc. No. 21-1, p. 13.
[31] *Id.* at p. 1.

threshold matter.[32]    The focal inquiry asks if a plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault—to support his claim that the defendant owed him a duty.[33]    This inquiry must also account for "the facts and circumstances of the case and the relationship of the parties."[34]    In any event, "[t]he scope of a duty may not encompass the risk encountered where the circumstances of the injury cannot reasonably be foreseen or anticipated, because in that instance[,] there is no ease of association between the risk of injury and the duty."[35]    The parties do not cite, nor did the Court find, any specific statutory provision governing a warehouse owner's liability for failing to monitor for, and promptly respond to, non-work related medical emergencies experienced by independent contractors on its premises.    The Court must therefore consider whether Plaintiff's cited case law or an independent general rule or principle of law confers an applicable duty of care.

At the core of this dispute is Plaintiff's contention that, while he was working as a contractor at Amazon's facility, he was struck by an unexpected medical episode and suffered injuries, the extent of which may have been mitigated if several of Amazon's internal policies—none of which concern the detection or treatment of medical emergencies on their face—had been followed.[36]    As an initial matter, "[i]t is widely recognized in the field of tort law that [] courts do not impose a general duty to come to the aid of one who is in peril[;] that is, one will not be held legally liable for his inaction even though his assistance could have saved the injured party."[37]    Absent a duty to

---

[32] *Brewer v. J.B. Hunt Transport, Inc.*, 35 So. 3d 230, 240 (La. 2010) (internal citations omitted).
[33] *Hardy v. Bowie*, 744 So. 2d 606, 614 (La. 1999).
[34] *Carr v. Sanderson Farm, Inc.*, 189 So. 3d 450, 457 (La. App. 1st Cir. 2016).
[35] *Id*.
[36] The parties do not dispute the fact that Plaintiff is an independent contractor.
[37] *Strickland v. Ambassador Ins. Co.*, 422 So. 2d 1207, 1209 (La. App. 1st Cir. 1982).

6

provide such assistance, it follows that one would have no duty to investigate for opportunities where it may need to do so.  However, "there is a legally recognized duty to render assistance in situations where the plaintiff's peril or injury is due to negligence on the part of the defendant or in situations where [the defendant] begins rescue and thereby discourages others from aiding the injured party."[38]  An additional exception to the general no-rescue rule applies when a special relationship exists between the parties.[39]  As discussed below, Plaintiff does not fit either of these exceptions neatly.

First, there is no suggestion that Plaintiff's sudden medical emergency was, in any way, caused by Amazon, or that Amazon's actions discouraged others from rendering aid to Plaintiff.  Plaintiff's injury was the result of an organic circumstance, not any act by Amazon.  Thus, a duty to rescue did not arise in this manner.

The second exception—asking for a special relationship between the parties—is also unavailing.  Plaintiff relies upon *Miller v. McDonald's Corporation*;[40] this case deals with an alleged "refusal to assist and/or refusal to render first aid after defendants knew or should have known that plaintiff had been [injured]."[41]  The decision, however, clearly implicates the relationship between a shopkeeper (McDonalds Corporation) and its patron.[42]  This is not the relationship between Plaintiff and Amazon, an independent

---

[38] *Macklin v. Businelle*, 2012 WL 2060737, at *2 (La. App. 1st Cir. 2012) (citing *Strickland*, 422 So.2d at 1209).

[39] *Id.*

[40] 439 So.2d 561, 564-65 (La. Ct. App. 1983).

[41] Here, Plaintiff does not allege that Amazon failed to render first aid or summon the appropriate authorities upon discovering his condition.  While Plaintiff does allege that Amazon is negligent for "failing to provide adequate medical treatment," the Complaint is devoid of any factual support for this proposition; indeed, Plaintiff does not provide any facts detailing what occurred once he was discovered by Amazon employees.  Conclusory statements without factual support are insufficient to survive a motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  By contrast, the plaintiff in *Miller* alleged that, following a shooting on its premises, McDonald's employees—once aware that an injury had occurred—"kept the door locked and continually refused" to allow the plaintiff's sister to call for help, citing company policy "not to let any [nonemployee] use the telephone."  439 So.2d at 564.

[42] *Miller*, 439 So.2d at 562 ("Plaintiff entered the McDonald's hamburger restaurant … and placed an

7

contractor and its contractee.  Notably, in *Turnage v. General Electric Company*, a district court applying Louisiana law considered the duty set forth by *Miller* and refused to extend its reach to a plaintiff-contractor who sought to hold a contractee liable in tort for negligently failing to swiftly evacuate him from an offshore rigging platform after he sustained injuries thereon.[43]  The court recognized that while "proprietors and property owners have duties of care to ordinary invitees … [Plaintiff] is no ordinary invitee: he is an *independent contractor*."[44]  Accordingly, the *Turnage* court concluded the contractee had no legal obligation to provide the contractor a medical evacuation following his injury, describing any help that was, in fact, provided to be mere assistance rather than the fulfillment of a duty.[45]  The Fifth Circuit agreed, finding "no genuine issue of material fact remain[ed] to indicate that [the defendant] owed a duty to transport [plaintiff] to a medical facility for treatment of his burns."[46]

Central to the district court's reasoning was the principle from *Ainsworth v. Shell Offshore, Inc.*,[47] that a defendant contractee who does not exercise or retain operational control over a plaintiff-contractor's work has no duty to intervene therewith, even if it has knowledge of a hazardous condition.  Importantly, the court clarified that a different outcome was not required simply because the contractee's representative was present to monitor the contractor's progress and, accordingly, performed periodic inspections—this did not equal "the exercise of operational control" sufficient to create a special

---

order.").

[43] 1989 WL 159342 (E.D. La. Dec. 18, 1989).

[44] *Id.* at *2.

[45] *Id.* at *3 (finding that evidence of the contractee's representatives assisting the independent contractor "in no way indicates that the [] representative has a duty to do so.").

[46] *Turnage v. General Elec. Co.*, 953 F.2d 206, 213 (5th Cir. 1992).

[47] 829 F.2d 548 (5th Cir. 1987).

relationship.[48]  Here, the fact that Plaintiff was often left alone to perform his work at the Amazon facility, coupled with the absence of any allegations suggesting the manner of his work was directed (in any way) by Amazon, suggests his circumstances are significantly analogous to the plaintiff in *Turnage*, and therefore inviting of a similar outcome.  Indeed, the present circumstances are even less hospitable to the notion of a contractee having a relationship-based duty to provide medical assistance to an injured contractor because, unlike in *Turnage*, Plaintiff's injury was not sustained as a result of work being performed for the contractee's benefit or by the conditions of the contractee's facility.[49]

To the extent the defendant-contractee in *Turnage* had no duty to provide (or even summons) immediate medical transport for an injured contractor, Amazon cannot be found, by way of that same relationship, to have had a duty to inspect a contractor's workstation to ensure he was not in medical distress following the activation of a door alarm.  Although Louisiana courts have long-recognized that "there may be a strong moral and humanitarian obligation" to inspect such alarms on the chance that someone may be experiencing an emergency requiring "aid and assistance," there is no legal responsibility to do so.[50]  In the absence of such a duty-creating relationship, the general rule that no affirmative duty exists to care for another in medical distress applies to Amazon.

Plaintiff's attempt to couch any such duty owed into Amazon's more general "duty

---

[48] *Turnage v. General Elec. Co.*, 1989 WL 159342, at *2 (E.D. La. Dec. 18, 1989).  Here Amazon is not alleged to have exerted any control over Plaintiff's duties or work.  Therefore, his suggestion that internal Amazon policies—namely, those requiring that (1) "safety representatives" accompany and monitor contractors on the premises, and (2) managers be present in the area Plaintiff was working in—could give rise to a duty to assist/rescue, notwithstanding the contractor-contractee relationship, is meritless.

[49] Again, Plaintiff does not allege that Defendant failed to render him aid or summons the appropriate authorities upon discovering his condition; instead, he alleges only the failure to take steps that would have resulted in those actions being taken sooner.

[50] *Marsalis v. LaSalle*, 94 So. 2d 120, 124 (La. App. Orleans 1957) (internal citations omitted).

to act reasonably in its provision of safety and security supervision," likewise, cannot succeed.[51]   While the duty of a landowner to provide for the safety of its invitees is recognized in Louisiana jurisprudence,[52] Amazon is correct that Plaintiff conflates the duty to provide "safety" on the premises with providing timely "emergency medical assistance."[53]   Indeed, Amazon's duty to Plaintiff was one of "not exposing [him] to unreasonable risks of injury or harm … given the nature of facility and the dangers presented by it … given [his] age, maturity, experience, familiarity with the premises[,] and its dangers."[54]   Thus, the Court concludes that any landowner/invitee duty inquiry must ask whether the mechanism of injury was internal to the premises or to the Plaintiff (i.e., a physical condition that created a foreseeable risk of harm or a personal medical condition).   In the latter instance, as relevant here, there will often be no duty for a landowner to have taken steps to detect or mitigate the harm that might arise from the condition—this flows logically from the well-settled principle that, "in the usual case, there is no obligation to protect the invitee against dangers which are known to him," personally.[55]   This applies with heightened force where the danger, which is personal to the invitee, is otherwise unknown to the landowner.[56]

---

[51] Rec. Doc. No. 23, p. 4.

[52] *Black v. Avondale Industries, Inc.*, 783 So.2d 505, 509 (La. App. 5th Cir. 2001).

[53] Rec. Doc. No. 21-1, p. 13.

[54] *Walker v. Union Oil Mill, Inc.*, 369 So. 2d 1043, 1047 (La. 1979).

[55] *Hodge v. St. Bernard Chapter No. 26, Home, Inc.,* 338 So.2d 934, 937 (La. App. 5th Cir. 1976).

[56] While Augillard does allege that he "repeatedly complained about Amazon's failure to follow its own safety policies and procedures," he sets forth no specific details on the substance of his complaints. Rec. Doc. No. 15, ¶ 9. Accordingly, the Court cannot conclude that Amazon had any prior knowledge, or could otherwise reasonably foresee, that Augillard could suffer a seizure. Even so, there is no suggestion that a contractee-landowner knowing about the medical condition of an independent contractor on its premises is sufficient to establish a legal duty to monitor for, and promptly respond, to its onset—to be sure, this assumes that a condition of the property was not a factor in bringing it about. This is consistent with the principle that "[i]n spite of the existence of the significant duty owed to invitees, [a] premises owner is not liable for accidents occurring on the premises through no fault of his own." *Mumphrey v. Rollins*, 468 So. 2d 580, 582 (La. App. 3rd Cir. 1985).

Accordingly, Plaintiff has failed to plead facts to establish that Amazon owed any legal duty to inspect door alarms or take comparative steps to ensure his medical emergency was detected sooner.

### C. Negligent Undertaking

Amazon next takes aim at Plaintiff's claim that he has plausibly alleged a claim for negligent undertaking.  To succeed under a theory of negligent undertaking, a plaintiff must show that the defendant (1) undertakes to render services, (2) to another, (3) which the defendant should recognize as necessary for the protection of a third person.[57] Importantly, "an affirmative or positive undertaking is required."[58]  In deciding whether this standard is satisfied, the Court considers "the scope of the defendant's involvement, the extent of defendant's authority, and defendant's underlying intent."[59]  Plaintiff alleges the following facts[60] are sufficient to show Amazon voluntarily assumed (or undertook) a duty to provide for his protection and safety:

- Amazon undertook to employ security personnel, install emergency alarms, and install employees/agents to monitor those alarms;
- Amazon undertook to accompany and monitor third party contractors working on its premises by implementing policies requiring a safety representative to do so;
- Amazon did so in order to provide a safe working environment for individuals such as Mr. Augillard;
- Amazon did so knowing that the services undertaken were necessary for the safety of individuals like Mr. Augillard;
- Given that he was alone at the time of his injury, Mr. Augillard and his

---

[57] *Hebert v. Rapides Parish Police Jury*, 974 So. 2d 635, 643 (La. 2007).
[58] *Pickard v. Amazon.Com, Inc.*, 387 So. 3d 515, 525 (La. 2024).
[59] *Id.*
[60] Rec. Doc. No. 23, p. 6 (citing Rec. Doc. No. 15, ¶ 6, 7, 8, 11, 14).

employer apparently relied on Amazon's undertaking to provide these supervision and monitoring services.

Applying the above-stated principles, however, Plaintiff has failed to make the necessary showing. First, Plaintiff cites no authority to support the proposition that the installation and subsequent monitoring of door alarms is sufficient to create a legal duty to promptly investigate for possible medical emergencies (or any other possible cause) each time one is triggered.[61] The same is true of implementing general policies aimed at supervising independent contractors working on the premises.[62] But Plaintiff alleges, on information and belief, that Amazon took these actions "to provide a safe working environment for individuals such as Mr. Augillard … recogniz[ing] the necessity of alarms to prevent harm to invitees"—and that a duty to do so arose accordingly.[63]

As an initial matter, "conclusory allegations and unwarranted deductions of fact are not [to be] admitted as true" for purposes of a motion to dismiss and will not suffice to prevent a motion to dismiss.[64] Importantly, Plaintiff alleges no facts to suggest that

---

[61] Nor does Plaintiff allege, or cite any authority suggesting, that Amazon was required by law or any other source to install security alarms or monitor its independent contractors at all times.

[62] Plaintiff does not cite, and the Court cannot find, any Louisiana case law to support the proposition that a company's internal policies—and the failure to follow them—can impose a duty on the company for purposes of negligence liability. That said, "[a] federal district judge sitting as a state trial judge in a diversity action, may, where there exists no specific state law in point, look to other states' laws in [an] effort to reach the same result that would probably be reached were the question to be litigated in state court." *Burgert v. Tietjens*, 499 F.2d 1, 8 (10th Cir. 1974). The Court, accordingly, finds instructive that district courts applying the law of other states have categorically rejected this position and concludes the same outcome would result under Louisiana law. *See Huffman v. Davey Tree Expert Co.*, 2025 WL 675458, at *19 (S.D. Ga. Mar. 3, 2025) (internal citations omitted) ("a private corporation's internal policies do not create a duty upon which a tort action may independently lie."); *Gusan v. Kroger Texas, L.P.*, 2021 WL 3290278, at *6 (N.D. Tex. Aug. 2, 2021) (internal citation omitted) ("[t]he Texas Supreme Court has refused to create a standard of care or duty based upon internal policies, and the failure to follow such policies does not give rise to a cause of action."); *Frye v. CSX Transportation, Inc.*, 2017 WL 4120102, at *7 (E.D. Mich. Sep. 18, 2017) (internal citation omitted) ("As a general rule, internal company policies may not be used to establish a legal duty in a negligence claim"); *Doe v. Delta Airlines*, 129 F. Supp. 3d 23, 47 (S.D.N.Y. Sep. 10, 2015) ("[w]hile common carriers owe a heightened duty of care to passengers … the content of these duties … is not set by a particular carrier's internal manual.").

[63] Rec. Doc. No. 15, ¶ 7.

[64] *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

12

Amazon's intent in installing the alarms or implementing the relevant policies was to anticipate and respond to non-work-related medical emergencies suffered by independent contractors on the premises.  While Plaintiff is entitled to have reasonable inferences drawn in his favor, the inferences drawn "must be rational and reasonable, not idle, speculative, or conjectural."[65]  At most, Plaintiff's allegations allow the Court to infer that the safety of independent contractors, generally, was a possible consideration in installing door alarms and requiring their supervision—such measures naturally touch upon safety concerns.  Even so, Plaintiff fails to allege sufficient facts for the Court to conclude Amazon's contemplated safety considerations extended beyond preventing harm from facility-related hazards to include detecting or responding to personal medical conditions.  Further, even if Plaintiff had alleged such facts, he cannot establish that the concern was of such magnitude, and the resultant actions so inspired by that concern, that a duty was assumed; "mere concern or minimal contact about safety matters are not sufficient to constitute an assumption of duty."[66]

Moreover, the Court notes that Plaintiff's alleged reliance[67] on Amazon monitoring and supervising his activities at the Warehouse did not create an enforceable legal duty for same or result in its assumption of the same.  Indeed, unilateral expectations are not

---

[65] *Richoux v. Armstrong Cork Corp.*, 777 F.2d 296, 297 (5th Cir. 1985).

[66] *Pickard*, 387 So. 3d at 525.  A different outcome might be warranted if Amazon had expressly trained or directed those charged with monitoring the cameras or supervising contractor activities with detecting potential medical episodes.  But that is not what is alleged here.

[67] Plaintiff's opposition memorandum directs the Court's attention to paragraph 11 of the Complaint where Plaintiff purportedly alleges "Mr. Augillard and his employer apparently relied on Amazon's undertaking to provide these supervision monitoring services."  Rec. Doc. No. 23, p. 6.  A review of that section, however, presents only factual allegations of what occurred on August 10, 2024—the words "rely" or "reliance" do not appear therein, nor is there any suggestion that Amazon knew of any reliance that Plaintiff or his employer, Jones Lang, placed on Amazon to monitor and supervise Plaintiff for potential medical episodes that could result from a personal condition.  Rec. Doc. No. 15, ¶ 11.

13

a proper source of legal duties.[68]   To conclude otherwise would invite an untenable proposition: a defendant's failure to outline its specific intent in adopting a policy or implementing security measures at its facility would expose it to liability for every possible harm a Plaintiff would expect those actions to protect against.   Nothing in Louisiana law suggests a duty can be so easily assumed.

For the above reasons, Plaintiff fails to sufficiently state a claim against Amazon for negligent undertaking.

### D.  Vicarious Liability

Finally, Plaintiff contends that, in addition to his claims against Amazon for its own negligence, Amazon is also vicariously liable for its employee's negligence.[69]   Under Louisiana law, "an employer is liable for its employee's torts committed if, at the time, the employee was acting within the course and scope of his employment."[70]   While Plaintiff does not single out the acts of any one employee, a fair reading of the Complaint identifies those managers and personnel who were absent from their assigned positions—"which led to a failure to identify the emergency or timely render aid"—as the likely source of Plaintiff's respondeat superior theory.[71]   Moreover, Plaintiff correctly points that Amazon does not directly challenge this cause of action in its motion to dismiss.[72]

Nevertheless, there can be no imposition of vicarious liability where it is not alleged that the conduct of an employee is either wrongful or independently actionable.[73]   As discussed above, the only actions implicating an Amazon employee are the alleged

---

[68]*See generally Wayne Enterprises, LLC v. McGhee*, 2017 WL 1960662, at *9 (D. Idaho May 10, 2017) ("[t]he subjective trust of one person in another is also not sufficient to create a duty.").
[69] Rec. Doc. No. 23, p. 6.
[70] *Timmons v. Silman*, 761 So. 2d 507, 510 (La. 2000).
[71] Rec. Doc. No. 15, ¶ 11.
[72] Rec. Doc. No. 23, p. 6.
[73] *Pelitire v. Rinker*, 270 So. 3d 817, 835 (La. App. 5th Cir. 2019).

failures to monitor or promptly inspect the alarm system and to follow the relevant contractor supervision policies.   But Plaintiff does not allege that any of Amazon's employees owed him a duty of care independent of the duties Amazon allegedly owed him as an invitee.  Absent such a duty, there can be no actionable negligence (i.e., tort) on the part of the employees.[74]  Moreover, "if there is no underlying tort, there can be no basis for the imposition of vicarious liability."[75]  Plaintiff therefore fails to state a claim for vicarious liability.

Even if he had so alleged, the Court finds no such duty can exist on the facts set forth in the Complaint for two reasons.  First, the employees at issue—just like Amazon— had no duty to come to the aid of Plaintiff absent having either a hand in causing the condition which put him peril or a special relationship.[76]  Again, Plaintiff does not allege facts suggesting this to be the case.  Second, Plaintiff does not cite, and the Court cannot find, any Louisiana jurisprudence to support that a private company's internal policies can create a legal duty for an employee to comply with those policies, let alone a case concluding the failure to do so will necessarily constitute negligence.  Other district courts, however, have summarily rejected this notion.[77]

## III.    CONCLUSION

For the reasons set forth above, Defendants' *Motion to Dismiss*[78] is GRANTED and Plaintiff's Complaint is dismissed WITH PREJUDICE.[79]

---

[74] *Polk v. Blanque*, 633 So. 2d 1382 (La. App. 4th Cir. 1994).

[75] *Danna v. Purgerson*, 2017 WL 5560179, at *5 (W.D. La. Nov. 17, 2017).

[76] *Strickland v. Ambassador Ins. Co.*, 422 So.2d 1207, 1209 (La. App. 1st Cir. 1982).

[77] See *Brougher v. Costco Wholesale Corporation*, 2025 WL 3525583, at *7 (N.D. Ga. Nov. 10, 2025) ("In Georgia, an internal company policy does not create a legal duty for an employee to comply with that policy and failure to follow the internal policy will not necessarily constitute negligence.").

[78] Rec. Doc. No. 43.

[79] Plaintiff requests leave to amend his Complaint for a second time.  Rec. Doc. No. 23, p. 6.  While Federal Rule of Civil Procedure 15 (a) sets out a liberal standard that favors leave, "that preference has no purchase

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 29th day of May, 2026.

_____

**CHIEF JUDGE SHELLY D. DICK**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

when amendment cannot cure the defect." *Ellsworth v. Dallas Texas Dep't of Veteran Affs.*, 2025 WL 3239806, at *5 (5th Cir Nov. 20, 2025). In other words, "leave to amend is not required when the plaintiff has already pleaded his best case." *Polinski v. Avondale Premier Collection*, 2025 WL 3902068, at *6 (N.D. Tex. Dec. 15, 2025). Here, because no legal duty exists, Plaintiff's claims based in negligence fail as a matter of law and, amendment being futile, are dismissed with prejudice. *Hayes v. Bank of America, N.A.*, 2020 WL 3065936, at *2 (N.D. Tex. May 15, 2020).